**NEIL BROTHERS LIMITED,**
Plaintiff,

v.

**WORLD WIDE LINES, INC., Aps
Promotional Solutions, Inc. and
John Does I–III, Defendants.**

No. 05–CV–1198 (ADS)(ATK).

United States District Court,
E.D. New York.

April 4, 2006.

See also 396 F.Supp.2d 340.

Galgano & Burke, LLP, Hauppauge, NY (Daniel P. Burke, Thomas M. Galgano,

Georgia Damoulakis, of Counsel) for the Plaintiff.

Pitney Hardin LLP, New York, NY (Marc A. Lieberstein, Liza Montalvo, Esq., of Counsel), for the Defendant World Wide Lines, Inc.

Berenato, White & Stavish, LLC, Bethesda, MD (Matthew Stavish, Esq., of Counsel), for the Defendant World Wide Lines, Inc.

Defendant APS Promotional Solutions, Inc., No Appearance.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves a patent dispute that arose between Neil Brothers Limited ("Neil Brothers" or the "plaintiff"), World Wide Lines, Inc. ("World Wide" or the "defendant"), and APS Promotional Solutions, Inc. ("APS") regarding the manufacture and sale of novelty drinking mugs that change in appearance when a hot liquid is poured into them. On January 21, 2006, the Court entered a default judgment against APS and referred the matter to United States Magistrate Judge James Orenstein to determine the amount of damages, including reasonable attorney's fees and costs.

Presently there are three motions before the Court: (1) the plaintiff's motion pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for leave to amend the amended complaint to add Photo USA Corp. as an additional plaintiff; (2) World Wide's motion pursuant to 28 U.S.C. § 1404(a) for an Order transferring this action to the Western District of Tennessee; and (3) World Wide's motion pursuant to Fed.R.Civ.P. 15(a) for leave to amend its answer to add an affirmative defense of inequitable con-

duct and a counterclaim for breach of contract.

## I. BACKGROUND

This action was commenced on March 3, 2005. The facts of this case are fully set forth in the Court's prior Memorandum of Decision and Order which determined World Wide's motion pursuant to Fed. R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction. *See Neil Bros. Ltd. v. World Wide Lines, Inc.*, 396 F.Supp.2d 340 (E.D.N.Y.2005). Familiarity with the allegations, facts, and defenses as set forth in that Memorandum of Decision and Order is presumed.

In sum, the plaintiff is the owner of two United States Patents. These are Patent No. 6,759,099 B2 (the "'099 patent"), which is entitled "Decoration Method Using Thermochromic Ink," and was issued by the United States Patent and Trademark Office ("USPTO") on July 6, 2004. Also there is Patent No. 6,902,775 (the "'775 patent") entitled "Decoration Method," which was issued by the USPTO on June 7, 2005. World Wide is the owner of United States Patent No. 6,281,165 (the "'165 patent") entitled "Thermochromatic Ink Covered Article Having Image Disposed Thereon and Method of Making the Same." The '165 patent was issued on August 28, 2001. Each of these patents describes a method for manufacturing a product that changes its appearance when heated.

The plaintiff alleges that the defendants are infringing the '099 and '775 patents by manufacturing and selling "color change mugs." In additional to seeking damages for the infringement of their patents, the plaintiff seeks a declaration that World Wide's '165 patent is invalid.

## II. DISCUSSION

### A. World Wide's Motion for a Change of Venue

A district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The movant bears the burden of establishing the propriety of transfer by clear and convincing evidence. *Excelsior Designs, Inc. v. Sheres*, 291 F.Supp.2d 181, 185 (E.D.N.Y.2003) (citing *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.1950)); *see also Hernandez v. Blackbird Holdings, Inc.*, No. 01 Civ. 4561, 2002 WL 265130, at *1 (S.D.N.Y. Feb.25, 2002). Furthermore, the movant must support its motion with a detailed factual affidavit. *See Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, *1 (S.D.N.Y. Sept. 30, 2003); *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, No. 00 Civ.1971, 2000 WL 1290585, *6 (S.D.N.Y. Sept.13, 2000).

In considering whether to grant a venue transfer, courts engage in a two-part test. The first question is whether the action "might have been brought" in the proposed transferee forum. Second, the Court must determine whether the transfer promotes convenience and justice. *See Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir.1978); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 436 (S.D.N.Y.2000). The parties do not dispute that this action could have been brought in the Western District of Tennessee. Thus, the sole inquiry before the Court with respect to this motion is whether convenience and the interests of justice support the transfer.

In making this determination, the Court is to consider the following factors: (1) convenience of the parties; (2) convenience of witness; (3) relative means of the parties; (4) locus of operative facts and

relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *See, e.g., Kroll v. Lieberman,* 244 F.Supp.2d 100, 102 (E.D.N.Y.2003); *HD Brous & Co., Inc. v. Synthesys Secure Techs., Inc.,* 229 F.Supp.2d 191, 198 (E.D.N.Y.2002); *Wine Markets Int'l Inc. v. Bass,* 939 F.Supp. 178, 181 (E.D.N.Y. 1996); *Modern Computer Corp. v. Ma,* 862 F.Supp. 938, 948 (E.D.N.Y.1994). The Court has broad discretion in balancing these factors. *See In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992); *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520–21 (2d Cir.1989).

█ The Court gives little weight to the alleged forum selection clause appearing in a patent license agreement signed by the parties in 1998, indicating that Tennessee courts are the "convenient venue." The defendants cite the following language from the license agreement in support of their argument that the case should be transferred to the Western District of Tennessee:

> The parties hereby agree that the only proper and convenient venue and/or jurisdiction for any litigation between them, or any cause of action, claim, suit, or demand allegedly arising from or related to this Agreement or the relationship of the parties as evidenced by this Agreement, shall be in the Circuit Court of Tipton County, Tennessee, the Chancery Court of Tipton County, Tennessee, or the United States District Court for the Western District of Tennessee, West Division, sitting in Shelby County, Tennessee.

Although this language is sufficient to constitute a mandatory forum selection clause, *see, e.g., Cronin v. Family Educ. Co.,* 105 F.Supp.2d 136 (E.D.N.Y.2000); *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.,* 198 F.R.D. 402, 404 (S.D.N.Y. 2001), World Wide admits that this agreement was terminated in 1998 shortly after it was executed. Therefore, this purported forum selection clause is not binding on the parties with regard to the current dispute.

### 1. The Convenience of the Parties

█ The logical relevant starting point in determining the convenience of the parties is their residence. In this regard, a transfer of venue should not merely shift the burden of inconvenience from one party to another. *See, e.g., Merkur v. Wyndham Int'l, Inc.,* No. 00 CV 5843, 2001 WL 477268, at *4 (E.D.N.Y.2001) (citing *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1322 (S.D.N.Y.1989)); *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 988 (E.D.N.Y.1991). The plaintiff will be obligated to travel a great distance whether this action is heard in the Eastern District of New York or the Western District of Tennessee. The plaintiff is a British company with its principal place of business in Birmingham, Great Britain. World Wide is a Tennessee corporation with its principal place of business in Covington, Tennessee. Obviously, Tennessee is more convenient to the defendants. The remaining defendant, APS, is identified as a Florida corporation with its principal place of business in Jacksonville, Florida. However, APS is currently in default. Thus, if the action remains in New York, all remaining parties will be required to travel. World Wide will be relieved of this burden if the action is transferred to Tennessee. Accordingly, this factor weighs in favor of transferring this action to the Western District of Tennessee.

## 2. The Convenience of the Witnesses

█ The convenience of the witnesses is probably the single most important factor in the transfer analysis. *See Intria Corp. v. Intira Corp.*, No. 00 Civ. 7198, 2000 WL 1745043, *2 (S.D.N.Y. Nov.27, 2000); *Invivo Research, Inc. v. Magnetic Resonance Equip.*, 119 F.Supp.2d 433, 436 (S.D.N.Y. 2000). Because of the importance of this factor, the party seeking transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573, 577 (S.D.N.Y.2001) (internal quotations and citation omitted). In considering the convenience of the witnesses, the Court should "not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y.2004); *see also Millennium, L.P. v. Hyland Software*, Inc., No. 03 Civ. 3900, 2003 WL 22928644, *3 (S.D.N.Y. Dec. 10, 2003).

The parties have identified fourteen potential witnesses whom they expect to testify at trial. None of these witnesses reside in New York. The following six witnesses currently reside in Tennessee: Mark Hobbs; Donald Godsey; Gary Cranford; Brenda Gatlin; Peggy Davis; and Barry Chase. The remaining six witnesses are from various locations in the United States and the United Kingdom: Shinel Bhagi (United Kingdom); James Peng (California); Randall Hozid (Rhode Island); Ronni Roelsi (Florida); Charles Boyce (California); Alan Jones (United Kingdom); Andrew David Curtis (United Kingdom); and James Lodge (United Kingdom).

The plaintiff identified seven of these fourteen witnesses. Of those seven witnesses identified by the plaintiff, five reside in Tennessee. Six of these potential witnesses are non-party witnesses. Of the six non-party witnesses, none reside in New York, one resides in Tennessee, while the remaining five are scattered throughout the United States and the United Kingdom. Looking at the location of the witnesses alone, this factor weighs heavily in favor of transfer. However, the Court must also consider the substance and import of these witnesses' anticipated testimony.

World Wide has identified Barry Chase as important to its case and informed the Court of the substance of his testimony. According to the defendant, Chase is the former president of World Wide and will testify about the relationship between the parties during the relevant time period. Chase was also present at the licensing negotiations between the parties. World Wide also states that Chase was instrumental in securing World Wide's '165 patent. Chase currently resides in Memphis, Tennessee, which is located within the Western District of Tennessee.

World Wide has also submitted a declaration of Donald Godsey. Godsey is the current owner of World Wide. World Wide does not explicitly state what Godsey would testify to if called at trial. However, the Court presumes that he would at least testify to those facts contained in his declaration that describe the relationship between the parties and their past dealings. Godsey also resides in Tennessee.

The plaintiff has identified Randal Hozid as the key witness for its claim of invalidity of World Wide's '165 patent. Hozid is a former Vice–President and President of World Wide's predecessor in interest. Declaration of Shinel Bhagi ("Bhagi Decl.") ¶ 12. The plaintiff states that Hoz-

id will testify to facts relating to World Wide's display and sale of the color change mugs at trade show in Dallas, Texas more that one year prior to filing for the '165 patent. Hozid resides in Barrington, Rhode Island.

The plaintiff also described the nature of the testimony expected from James Lodge and Alan Jones, both residents of the United Kingdom; and Charles Boyce, a California resident. The plaintiff claims that Lodge is the inventor of the plaintiff's '099 and '775 patents. Jones "assisted Mr. Lodge in the commercialization of [their] invention and in prosecution of his [patent] application." The plaintiff further claims that Boyce assisted Lodge in the prosecution of one of his patents.

In sum, the defendant has described for the Court the general nature of the testimony of two of its potential witnesses. Both of these witnesses live in Tennessee. The plaintiff has identified the substance of the testimony of several witnesses. None of these witnesses live in New York or Tennessee.

On balance, the convenience of the witnesses weighs in favor of transfer. Approximately half of the witnesses identified by the parties reside in Tennessee, while none reside in New York. If the case is transferred, Chase and Godsey will be relieved of traveling entirely. By contrast, if the case is not transferred, the witnesses identified by the plaintiff, Hozid, Lodge, Jones, and Boyce, will still be required to travel. In the Court's view, it is only slightly less convenient to travel from the United Kingdom to New York than it is to travel from the United Kingdom to Tennessee. See Bionx Implants, Inc. v. Biomet, Inc., No. 99 Civ. 740, 1999 WL 342306, at *3 (S.D.N.Y.1999) (holding that witnesses traveling from Finland were no more inconvenienced by having to travel to Indiana than they would be traveling to New York); accord Cento Group, S.p.A. v. OroAmerica, Inc., 822 F.Supp. 1058, 1061–62 (S.D.N.Y.1993) (European plaintiff was no more inconvenienced by litigating in California than in New York); Ricoh Co. Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 484 (D.N.J.1993) (plaintiff's witnesses from Japan were no more inconvenienced by testifying in Minnesota than in New Jersey). Accordingly, the Court finds that this important factor favors a transfer to Tennessee.

### 3. Access to Evidence

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., No. 05 Civ. 8038, 2006 WL 360375, at *4 (S.D.N.Y. Feb. 14, 2006); Millennium, L.P. v. Hyland Software, Inc., No. 03 Civ. 3900, 2003 WL 22928644, at *4 (S.D.N.Y. Dec. 10, 2003). In this case, two of the three claims raised by the plaintiff are for patent infringement. World Wide is the alleged infringer. World Wide's relevant documents are located at its headquarters in Covington, Tennessee.

The plaintiff contends that this factor should not weigh in favor of the defendant because World Wide has not shown that moving their documents to New York would be particularly burdensome. However, "common sense suggests that retaining this case in New York imposes some incrementally greater burden, however, slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in [Tennessee]." Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F.Supp.2d 282, 289 (S.D.N.Y.2004). But see Aerotel, Ltd. v. Sprint Corp., 100 F.Supp.2d 189, 197 (S.D.N.Y.2000) ("The location of documents, is neutral '[i]n today's era of photocopying, fax machines

and Federal Express.' ") (quoting *Coker v. Bank of Am.*, 984 F.Supp. 757, 766 (S.D.N.Y.1997)). Accordingly, this factor weighs in favor of transfer, but only minimally.

### 4. Location of Operative Facts

The locus of operative facts in patent infringement cases usually lies where the allegedly infringing product was designed, developed, and produced. *Invivo Research, Inc. v. Magnetic Resonance Equip.*, 119 F.Supp.2d 433, 439 (S.D.N.Y. 2000); *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99 Civ. 740, 1999 WL 342306, at *4 (S.D.N.Y.1999); *see also Walker v. The Jon Renau Collection, Inc.*, No. 05 CV 6781, 2005 WL 3147864, at *3 (S.D.N.Y. Nov. 23, 2005); *MasterCard Int'l Inc. v. Lexcel Solutions, Inc.*, 03 Civ. 7157, 2004 WL 1368299, at *6 (S.D.N.Y. June 16, 2004); *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F.Supp.2d 525, 530 (S.D.N.Y.2004). Here, the plaintiff has not alleged that any of the research, design, development, or manufacture of the accused product took place in New York. By contrast, the defendants have submitted the declaration of Donald Godsey ("Godsey Decl.") stating that the accused product was designed by an employee of World Wide residing and working in Tennessee. Godsey Decl. ¶ 22. World Wide processed purchase orders at its corporate offices in Tennessee, and keeps its records there. Godsey Decl. ¶ 31. World Wide's inventory of the accused product that has not yet been sold are stored in Tennessee. Godsey Aff. ¶ 32. Finally, all of World Wide's current employees and the inventor of its patent at issue in this case reside in Tennessee. Godsey Decl. ¶ 33.

The plaintiff argues that the Court should give greater weight to World Wide's admission that it sold the allegedly infringing product in New York. According to the plaintiff, "[t]hese sales are at the very heart of this action and will be used to prove infringement." However, "[w]here a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer." *Invivo Research, Inc.*, 119 F.Supp.2d at 439–40; *see also* Walker, 2005 WL 3147864, at *3; *Bionx*, 1999 WL 342306, at *4. According to World Wide, less than 5% of its sales of the accused product occurred in New York. By contrast, World Wide sold approximately 14.3% of its product in Florida; 13.3% in Texas; 11.4% in California; 5.8% in Wisconsin; and 5.2% in New Jersey.

The Court is also unpersuaded by the plaintiff's argument that transfer is unwarranted because certain events underlying its cause of action for a declaration of invalidity for World Wide's patent occurred in Texas. The fact that some of the events underlying one of the plaintiff's causes of action occurred in Texas does not weigh in favor of litigating the matter in either New York or Tennessee. Accordingly, this factor also weighs in favor of transfer.

### 5. The Relative Means of the Parties

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." *KPMG Consulting, Inc. v. LSQ II, LLC*, No. 01 Civ. 11422, 2002 WL 1543907, *4 (E.D.N.Y. July 12, 2002) (internal quotations and citation omitted). "A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Federman Assocs. v. Paradigm Medical Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, *4 (S.D.N.Y. Apr.8, 1997).

Relying primarily on the declaration of Shinel Bhagi, the plaintiff argues that a transfer would be inappropriate because

there is a vast disparity between the parties' relative means. Specifically, the plaintiff argues that it is small family run business with only one full-time employee, Shinel Bhagi, and several part-time employees who are family members of Bhagi. By contrast, World Wide is a substantially larger corporation with approximately one-hundred employees. Furthermore, the plaintiff argues that World Wide's gross revenue, approximately seven million dollars is 2005, is significantly greater than plaintiffs, five-hundred thousand dollars in 2005. Finally, the plaintiff argues that it will be required to retain local counsel in order to litigate in Tennessee, and that it has agreed to indemnify the proposed plaintiff Photo USA for all legal expenses and potential damages in connection with this litigation. According to the plaintiff, the result of these factors is that it would pose a much greater burden on the plaintiff to litigate in Tennessee than would be imposed on World Wide by retaining the litigation in New York.

For obvious reasons it would be less costly to World Wide if the trial in this case is held in Tennessee. The only additional hardship identified by the plaintiff if it is required to litigate in Tennessee rather than New York is the prospect of having to retain local counsel. The plaintiff contends that having to do so "will place an added extreme financial burden upon the company and could also make it economically unfeasible for Neil Bros. to continue this action." The additional expenses incurred as a result of obtaining the services of local counsel is a legitimate concern under Section 1404(a). See *Fisher v. Hopkins*, No. 02 Civ. 7077, 2003 WL 102845, at *4 n. 2 (S.D.N.Y. Jan.9, 2003). Relying solely on the financial estimates noted above, it seems it would be less of a hardship for World Wide to retain local counsel in New York, if it chose to do so, than it would for the plaintiff to retain local counsel in Tennessee.

However, the plaintiff's argument relating to this factor is weakened by the following considerations: (1) the plaintiff has offered no documentation other than the Bhagi Declaration in support of its argument that it would be prohibitively expensive to prosecute this action in Tennessee, *see Federman*, 1997 WL 811539, at *4; (2) the plaintiff merely speculates regarding its ability to prosecute the action if transferred, as Bhagi states only that transfer to Tennessee "could" make this action economically unfeasible, *see id.* at *5; and (3) the conclusion that retaining local counsel would add to the plaintiff's financial burden assumes that the plaintiff would hire local counsel in addition to, rather than in place of, its current counsel.

In its determination of this factor, the Court has some concerns about the propriety of considering the costs associated with the plaintiff's indemnification of a party that has not yet been joined in this matter. Nevertheless, the issue was raised by the plaintiff, and the Court also recognizes the inconsistency between the plaintiff's position in this motion and its concurrent motion to amend its pleading. On the one hand, the plaintiff argues that it should be permitted to join an additional plaintiff for whom it will pay all costs, including attorneys fees. On the other hand, the plaintiff argues that it has insufficient means to continue this action, and implies that it may face financial ruin, should the matter be transferred.

In sum, the plaintiff had made an insufficient showing that this matter should not be transferred based on financial considerations. Accordingly, this factor does not weigh against transferring the case to Tennessee.

### 6. The Ability to Compel the Attendance of Witnesses

In determining whether a change of venue is appropriate, the Court will also ex-

amine the ability to compel the attendance of witnesses. *See Merkur v. Wyndham Int'l, Inc.*, No. 00 Civ. 5843, 2001 WL 477268, \*\*1–2 (E.D.N.Y. Mar.30, 2001). Neither party has made a showing with respect to this factor sufficient to favor either forum over the other. The plaintiff did not provide any affidavits of potential witnesses stating that such witnesses would not appear if the action was transferred to Tennessee. Likewise the defendant failed to provide any affidavits of potential witnesses stating that they would not appear if the action remained in New York. Thus, this factor is neutral.

### 7. The Forum's Familiarity with the Governing Law

"[T]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." *Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308, 1998 WL 397889, at \*6 (S.D.N.Y. July 16, 1998) (citations omitted). Where, as here, the law to be applied is federal patent law, the factor is neutral. *Wechsler v. Macke Int'l Trade, Inc.*, No. 99 Civ. 5725, 1999 WL 1261251, at \*9 (S.D.N.Y. Dec.17, 1999) ("Patent law is federal law and 'any district court may handle a patent case with equal skill' ") (quoting *Bionx*, 1999 WL 342306,\*5)(additional citation omitted).

### 8. The Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir.2001) (" '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' ") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *see also Ainbinder v. Potter*, 282 F.Supp.2d 180, 191 (S.D.N.Y.2003); *In re Nematron Corp. Sec. Litig.*, 30 F.Supp.2d 397, 405 (S.D.N.Y.1998); *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998). However, the plaintiff's choice of forum is not entitled to great weight when the operative facts have "little or no connection with the transferor forum," *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952, 1999 WL 540443, at \*8 (S.D.N.Y. 1999) (quoting *Totonelly v. Cardiology Assocs. of Corpus Christi, Inc.*, 932 F.Supp. 621, 623 (S.D.N.Y.1996)), or when the plaintiff does not reside in his chosen forum. *See Coker v. Bank of Am.*, 984 F.Supp. 757, 766 (S.D.N.Y.1997); *Eskofot v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 96 (The "deference accorded to plaintiff's choice of forum . . . is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); *Thomas Am. Corp. v. Fitzgerald*, 94 Civ. 0262, 1994 WL 440935, at \*5 (S.D.N.Y.Aug.11, 1994) ("[T]he plaintiff's choice of forum is accorded less weight where the plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F.Supp. 207, 208 (S.D.N.Y.1989) ("A plaintiff's choice of forum is entitled to substantial weight. But where a plaintiff chooses a forum that is not his residence, that weight is diminished.") (citation omitted).

However, New York is not the plaintiff's residence; the plaintiff has not alleged that it transacts business here; none of the operative facts giving rise to this lawsuit occurred in New York; and none of the parties or witnesses reside here. The only connection at all between this lawsuit and New York is the fact that a small portion of the defendant's sales of the ac-

cused product were made here; and the plaintiff's counsel has offices in New York. Accordingly, the plaintiff's choice of forum will not be afforded the significant weight that this factor is typically assigned.

### 9. Calendar Congestion

"Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Miller v. Bombardier Inc.*, No. 93 Civ. 0376, 1993 WL 378585, at *5 (S.D.N.Y. Sept.23, 1993). This factor also weighs in favor of transfer. World Wide has offered proof regarding the relative press of business in the Western District of Tennessee as compared to the Eastern District of New York. As evidence of the relative calendar congestion in the two districts, World Wide has submitted "Pacer" reports including a "District Summary report." World Wide contends that these reports show that the Eastern District of New York has "an average of 626 cases pending amongst 40 judges (including magistrate judges), for an average case load of 15 cases per judge." However, the Court's own figures reveal that as of the date of this opinion, this Court has in excess of 330 civil cases currently pending. The Court also notes that the Eastern District of New York's caseload is among the highest in the Federal judiciary. On this basis, the Court finds that this also slightly weighs in favor of transfer.

### 10. As to Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances

Finally, based on the totality of the circumstances, the interests of justice favor transfer to the Western District of Tennessee. This case is still in its early stages and minimal discovery had taken place. Also, as stated above, the locus of operative facts is in Tennessee; most of the relevant documents relating to the al-

leged infringement are in World Wide's possession in Tennessee; neither party or any witness is located in the Eastern District of New York; the defendant and several witnesses are located in Tennessee; the plaintiff and many witnesses will be required to travel great distances whether the trial is held in New York or Tennessee; the plaintiff's claims have no relationship to New York; and much of the interaction between the parties, including integral business meetings, took place in Tennessee. Accordingly, transfer is clearly warranted.

### B. As to the Parties' Motions to Amend their Pleadings

Because the Court has determined that transferring this case to the Western District of Tennessee is appropriate, it declines to make further rulings on the parties' respective motions to amend their pleadings. Accordingly, both motions are denied, without prejudice, and subject to renewal following the transfer of this case.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the defendant World Wide Lines, Inc. pursuant to 28 U.S.C. 1441(a) to transfer this case to the District Court for the Western District of Tennessee is **GRANTED**; and it is further

**ORDERED**, that both parties' motions pursuant to Fed.R.Civ.P. 15(a) for leave to amend their pleadings are **DENIED** without prejudice, subject to renewal in the Western District of Tennessee; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**